

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| UNITED STATES OF AMERICA, | CR 16-33-BLG-SPW |
|---|---|
| Plaintiff, | |
| vs. | OPINION and ORDER |
| RANDY SCOTT LAEDEKE, | |
| Defendant. | |

Before the Court is Defendant Randy Scott Laedeke's motion to dismiss this case for lack of jurisdiction and failure to state an offense. (Doc. 21). Laedeke argues that the United States' reliance on emails exchanged within Montana that traveled to an out-of-state server is too tenuous to establish federal jurisdiction in this matter. He also argues that the United States did not allege facts sufficient to establish a fraudulent scheme, and that because the emails were not an integral part of the scheme, no wire fraud exists. The United States filed its reply on September 13, 2016. (Doc. 25). The Court deems this matter appropriate for decision without oral argument. D. Mont. Local Rule 47.2(e).

I.  **Background**[1]

Laedeke is an attorney in Billings, Montana. He was hired to represent the estate of W.N. in a wrongful death civil suit in 2008, after W.N. was killed in a car accident in 2005. In October 2008, Laedeke successfully settled W.N.'s case for $300,000. W.N. had various legal heirs including his wife, V.N., and his daughter, W.P.

In accordance with his contract with W.N.'s estate, Laedeke deducted $184,599 from the settlement amount for his fee and expenses related to the suit. Laedeke also distributed $49,903.90 to V.N. or to others on her behalf, which left $65,497.10 remaining to distribute to W.N.'s heirs. The United States alleges that sometime between October 15, 2008 and March 31, 2010, Laedeke embezzled the remaining funds and removed the entire $65,497.10 for personal expenses.

In January 2014, Laedeke emailed W.P. about a proposal for disbursing the settlement funds. In response, W.P. stated that she could not "consider anything until [Laedeke] provide[d] [her] with what [she] ha[d] been asking for the last 6 years," including "copies of receipts or a copy of the cancelled check from the bank for ALL expenses i.e., the investigator, max small (sic) etc.... ." Laedeke emailed her back and stated that he "was pretty sure [he] sent copies of the expense[s]" previously. He reiterated the expenses and explained "banks quit

---

[1] The Court has obtained the following facts from the Indictment and the parties' briefs filed on this issue.

sending canceled checks back to account holders several years ago." He then stated, "[y]ou either want the money or you don't. If you want to fight over the money with [V.N.] you will only get about $17,000 as opposed to $60,000." Although Laedeke and W.P. exchanged those emails in Montana, the emails traveled interstate to an email server in either New Jersey or New York.

On March 18, 2016, the grand jury indicted Laedeke on two counts of wire fraud. The Indictment charges that on January 15 and 16, 2014, Laedeke "devised a material scheme and artifice to obtain money by false and fraudulent pretenses, representations, and promises . . . and thereafter to execute the scheme so devised . . . by wire communication in interstate commerce[.]" Counts I and II allege that he "did knowingly cause to be transmitted in interstate commerce by means of wire communications an email from his email account . . . to the email account of W.P. which traveled interstate by routing through a server located in Hicksville, NY[]."

## II. Legal Standard

Federal Rule of Criminal Procedure 12(b) allows consideration at the pretrial stage of any defense "which is capable of determination without the trial of the general issue." *United States v. Nukida,* 8 F.3d 665, 669 (9th Cir. 1993). "On a motion to dismiss an indictment for failure to state an offense, the court must accept the truth of the allegations in the indictment in analyzing whether a

3

cognizable offense has been charged." *United States v. Boren,* 278 F.3d 911, 914 (9th Cir. 2002).

## III. Discussion

### A. Federal Jurisdiction

Counts I and II are based on the emails between Laedeke and W.P., both of whom were located in Billings when the emails were exchanged. Laedeke argues that he did not know the emails would travel out of state. He also argues that because the emails were sent intrastate, they cannot constitutionally provide a basis for jurisdiction under the wire fraud statute. He reasons that the incidental routing of intrastate communications through other states is too tenuous an interstate connection to be considered "interstate commerce" under the Constitution. He proposes that the location of the communicating parties and the *de minimis* character of the interstate travel should determine federal jurisdiction. The Court disagrees.

The starting point for the analysis is 18 U.S.C. § 1343, the wire fraud statute. It provides in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, *transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce,* any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

4

18 U.S.C. § 1343 (emphasis added).

Here, the emails indisputably traveled by wire from Montana to New York and back to Montana. And wires are indisputably channels or instrumentalities of interstate commerce. *United States v. Jinian*, 725 F.3d 954, 968 (9th Cir. 2013). *See also Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 271 (1964) (Commerce includes "travel, trade, traffic, commerce, transportation, or communication."); *United States v. Carnes*, 309 F.3d 950, 954 (6th Cir.2002) (recognizing that telecommunications are channels and instrumentalities of interstate commerce). Accordingly, Laedeke's charged conduct falls "within the extensive reach of the Commerce Clause," at least facially, under which Congress may (1) "regulate the use of the channels of interstate commerce," (2) "regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities," and (3) "regulate those activities having a substantial relation to interstate commerce." *Jinian*, 725 F.3d at 968 (quoting *United States v. Lopez*, 514 U.S. 549, 558–59 (1995) (citation omitted)). As a result, the Court has jurisdiction unless either of his arguments have merit. In the Court's view, they do not.

### 1. Mens rea

As an initial matter, the fact that Laedeke did not know the emails would travel out of state is irrelevant. Congress views the interstate requirement as

5

distinct from, and subject to a different rule than, the elements describing the substantive offense. *Jinian*, 725 F.3d at 956. Specifically, the statute's interstate requirement is jurisdictional only – "[i]f the wire employed is an interstate wire the requirements for federal jurisdiction are satisfied." *Id.* at 964 (internal citations and quotations omitted). In other words, the wire fraud statute's only mens rea requirement is a specific intent to defraud; a defendant does not need to know that he was sending an interstate wire for the United States to establish jurisdiction. *Id* at 964-65. So whether Laedeke knew the emails would travel out of Montana is neither here nor there; the fact that they did satisfies the jurisdictional element.

### 2. Strength of the interstate connection

Laedeke also argues that the incidental routing of intrastate communications through other states is too tenuous an interstate connection to be considered interstate commerce under the Commerce Clause. He argues that the location of the communicating parties should govern in the case of *de minimus* interstate connection. The Court finds no legal support for this argument.

In construing criminal statutes, a court's "task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Negonsott v. Samuels*, 507 U.S. 99 (1993). As long as the statutory scheme is coherent and consistent, there

6

generally is no need for a court to inquire beyond the plain language of the statute. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S 235, 240-41 (1989).

Here, the statutory language, "[t]ransmits . . . in interstate commerce" is not ambiguous. *See United States v. Pezzino*, 535 F.2d 483, 484 (9th Cir. 1976) (transmits is sending); *Telephone News System, Inc. v. Illinois Bell Tel. Co.*, 220 F.Supp. 621, 638 (N.D. Ill. 1963) (same). The plain meaning encompasses the conduct in this case: sending an email that travels out of one state, into another, and back again. In fact, Laedeke has not claimed the statute is ambiguous.

Without providing any significant legal support, however, Laedeke assumes that Congress does not have the authority to punish his conduct because of its largely intrastate character. But the Supreme Court concluded long ago that "as Congress has power, when necessary for the protection of interstate commerce, to regulate intrastate transactions, there is no constitutional requirement that the scope of the statute be limited so as to exclude intrastate communications. . . as long as the instrumentality itself is an integral part of an interstate system." *Weiss v. United States*, 308 U.S. 321, 327 (1939); *accord Gonzales v. Raich*, 545 U.S. 1, 22 (2005) (recognizing that it is "of no moment" that Congress's valid regulation of interstate activity "ensnares some purely intrastate activity"); *see also Heart of Atlanta Motel, Inc.*, 379 U.S. at 271 ("That some parts or segments of [wire communications] may take place only in one State cannot, of course, take from

7

Congress its plenary power to regulate them in the national interest."). Laedeke cannot and does not contend that email correspondence is not an integral part of an interstate communication system.

It is also worth noting that Congress did not place any parameters on the amount of interstate communication sufficient to meet the jurisdictional element. According to the statutory language, all that is necessary to meet the interstate nexus element is that the wire communication crosses state lines. To that end, courts across the country have regularly found this requirement satisfied based on evidence of incidental interstate communications. *See e.g. United States v. Brumley*, 116 F.3d 728 (5th Cir. 1997) (affirming wire fraud conviction where defendant fraudulently induced victims to send money via Western Union from one location to another in Texas, but where the government offered proof that the wire transmission was routed through a Western Union processing center outside of Texas); *United States v. Davila*, 592 F.2d 1261 (5th Cir. 1979) (same); *United States v. Bryant*, 766 F.2d 370 (8th Cir. 1985) (affirming wire fraud conviction when Western Union transmissions were sent and received in Missouri, but where wire transfer was processed by Western Union facility located in Virginia); *United States v. Kammersell*, 7 F. Supp. 2d 1196 (D. Utah 1998) (upholding conviction under 18 U.S.C. § 875(c) (2000), which prohibits persons from sending threatening messages in interstate commerce, where defendant sent threatening e-mail to

victim located in the same state, but where the message was routed through an America Online processing facility in Virginia); *United States v. Siembida*, 604 F.Supp. 2d 589, 597 (S.D. N.Y. 2008) (wire fraud statute was satisfied when emails exchanged within New York were routed through a server in Pennsylvania).

Laedeke has not provided this Court with any reason to part ways with the many courts who have previously considered, and rejected, this argument. To require the United States to prove a substantial interstate communication occurred would be reading a requirement into the statute that is not there. This Court will not do so. Laedeke's motion to dismiss for lack of jurisdiction is denied.

### B.  Sufficiency of the Indictment

Next, Laedeke argues that the Indictment is facially invalid because Counts I and II fail to state an offense. He alternatively argues that even if an offense was properly alleged, the United States cannot prove the emails were an integral part of the offense. The United States, on the other hand, contends that the motion is premature considering the "sufficiency of the evidence" standard, and that the indictment is valid on its face in any event.

Rule 7 of the Federal Rules of Criminal Procedure provides that an "indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) (quoting Fed.R.Crim.P. 7(c)(1)). An indictment satisfies

9

Rule 7 if it provides "the substantial safeguards to criminal defendants that indictments are designed to guarantee." *United States v. Cecil,* 608 F.2d 1296, 1296 (9th Cir. 1979). Accordingly, an indictment must allege sufficient facts to (1) enable the defendant to prepare a defense, (2) ensure that the defendant is prosecuted on the basis of facts presented to a grand jury, (3) enable the defendant to plead double jeopardy against a later prosecution, and (4) inform the court of the facts alleged so that it can determine the sufficiency of the charge. *Id.* An indictment that fails to set forth a sufficient factual basis for the charges must be dismissed; a bill of particulars cannot save it. *See United States v. ORS, Inc.,* 997 F.2d 628, 631 n.5 (9th Cir. 1993).

Here, the Indictment fails to sufficiently allege an offense under the wire fraud statute. Wire fraud consists of using wires in "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises." 18 U.S.C. § 1343. The Indictment alleges that Laedeke "devised a material scheme and artifice to obtain money by false and fraudulent pretenses, representations, and promises . . . and thereafter execute[d] the scheme." (Doc. 2 at 1-2). The Indictment then alleges that Laedeke "embezzled the money and removed the entire $65,497.10 for personal expense." (*Id.* at 2).

The United States' allegation of embezzlement is the necessary act of deception committed by Laedeke. But, the Indictment fails to allege that either V.N. or W.P. was ever deceived. *See United States v. Lew,* 875 F.2d 219, 221 (9th Cir. 1989) ("[T]he intent must be to obtain money or property from . . . *one who is deceived* . . . ." (Emphasis added)); *McNally v. United States,* 483 U.S. 350, 358 ("The words to defraud usually signify the deprivation of something of value by trick, deceit, chicane, or overreaching.") (Internal quotations omitted). Instead, it simply alleges that $65,497.10 remained in the settlement fund, which should have been, but was not, distributed equitably among W.N.'s legal heirs. (Doc. 2 at 2). While the Indictment does allege that Laedeke embezzled the money and removed the entire amount for personal expenses, (*id.*), alleging that the heirs did not get the money is not the same as alleging that they were deceived. And, importantly, the Indictment does not allege any other facts suggesting that V.N. or W.P. were deceived.

The United States explains in its brief that Laedeke's scheme was to lead W.P. to believe that settlement money still existed in the account after he had taken it. (Doc. 25 at 8). But the *Indictment* itself does not allege any such facts. Without some allegation that V.N. or W.P. was deceived or tricked into being deprived of the $65,497.10 Laedeke owed them, the present Indictment fails to allege an essential element of wire fraud.

11

The Indictment lacks sufficient facts to elucidate the alleged criminal activity. *Cf. United States v. Bacheller*, CR 08-40-BLG-RFC (2008), Information (08-40, Doc. 1). In *United States v. Bacheller*, the United States charged the defendant with similar conduct: taking money from his clients and depositing it into his own account. (*Id.*) There, however, the United States clearly set out the defendant's alleged role in the Information, stating that, "as an attorney, the defendant ... was required to maintain a trust account in to which he was required to deposit client funds, segregating them from his own personal and business accounts..." (*Id.* at 2). The United States also explained that the defendant "devised ... to defraud both his clients ... of and concerning funds received by him on their behalf and use those funds for his personal benefit." (*Id.*) Here, the United States alleges that Laedeke devised a scheme to obtain money by false pretenses and was hired to represent W.N.'s estate, but provides no further details regarding the scheme.

In *Bacheller*, the United States alleged a scheme where "the [d]efendant ... would receive funds on behalf of his clients[,] ...deposit these funds into either his own office account or into his attorney trust account" and then would "use these funds to pay either office operating expenses or for his own personal benefit having no legal claim to nor legal right to use these funds for his own benefit." (08-42 Doc. 1 at 2). This language is completely missing from the Laedeke

12

Indictment. The Court, like Laedeke, is left wondering what scheme the United States is alleging. Was the problem that the money was in the wrong account? Or that it was gone?

Finally, the United States in *Bacheller* also made clear in the Information how the wires furthered the scheme. There, the United States alleged that the defendant mailed "a cover letter and check in the sum of $43,280.86, which represented funds . . . of the Defendant's client" to himself in one instance and "transferred [$13,968 of a client's funds] from his bank account ... to his pension account," in another instance. (08-42 Doc. 1 at 3). In contrast, here the Indictment completely fails to connect the dots between the scheme and the wires. For example, if Laedeke's final transaction embezzling the money occurred on March 31, 2010, how are emails from 2014, almost four years later, relevant to the scheme? Providing the answer in briefing, but not in the Indictment, is insufficient. The Indictment must therefore be dismissed.

## III. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (Doc. 21) is GRANTED.

DATED this 26th day of September 2016.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge

13